NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MISBAH JOY JOSEPH, *Plaintiff*, v. AXA EQUITABLE LIFE INSURANCE COMPANY, *Defendant*. | Civil No.: 18-cv-3839 (KSH) (CLW) **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I.  Introduction

This matter comes before the Court on a report and recommendation filed by Magistrate Judge Cathy L. Waldor (D.E. 16), recommending that the Court grant the motion (D.E. 8) of defendant AXA Equitable Life Insurance Company ("AXA") to transfer venue to the United States District Court for the Southern District of New York. No party has filed objections to Judge Waldor's report and recommendation. For the reasons set forth below, the Court accepts the report and recommendation and grants AXA's motion to transfer venue.

## II.  Background

On March 20, 2018, plaintiff Misbah Joy Joseph ("Joseph") filed a complaint (D.E. 1) asserting that AXA fired her in violation of the federal Family and Medical Leave Act and numerous other laws, after she sought to take leave to care for a newly-adopted child. The complaint alleges the following sequence of events. AXA hired Joseph in November 2012 as the United States Head of Training, and the following year promoted her to the position of Global Head of Training. (Compl. ¶ 11.) As of January 2017, Joseph held the position of Head of Culture, Engagement, Employer Branding, and was the company's Chief Diversity Officer. (*Id.*

1

¶ 12.)  Joseph received positive evaluations during her employment with AXA, including as recently as July 2017.  (*Id.* ¶ 13.)  Relevant to the present motion, Joseph certifies that she began working out of AXA's New York office in 2015 for a period, and then, throughout 2017, worked out of that office.  (D.E. 11-3, Joseph Decl. ¶¶ 4-5.)

In the summer of 2017, Joseph sought and received approval for a four-day workweek schedule due to her hosting a U.S. government-sponsored orphan.  (Compl. ¶ 14.)  Additionally, she advised multiple supervisors and others at AXA, including her direct supervisor, human resources personnel, an assistant general counsel, and the company's CEO, of her intention to adopt a child.  (*Id.* ¶¶ 15-17.)  In late November 2017, Joseph learned that she would have the opportunity to adopt a child in Wyoming who was due to be born in mid-January 2018.  (*Id.* ¶ 17.)[1]

Joseph informed her supervisor on December 4, 2017, of her decision to take leave under AXA's paid parental leave policy, and the following day contacted the company's leave administrator to set up a claim.  (*Id.* ¶¶ 18, 20.)  Joseph describes her supervisor's response to the news as cold and unsupportive.  (*Id.* ¶ 18.)  On December 7, 2017, Joseph obtained a court order granting her adoption rights to the child.  (*Id.* ¶ 21.)  She subsequently provided additional information to her supervisor regarding leave dates and agreed to supply further details in late December or early January.  (*Id.* ¶ 22.)  Joseph then took several days off to visit the hospital where the baby was to be born and to speak with a physician there.  (*Id.* ¶ 23.)

On December 12, 2017, immediately after her return, Joseph was terminated from her position with AXA, losing, among other compensation, over $400,000 in unvested performance

---

[1] The complaint labels two consecutive paragraphs as the seventeenth paragraph.  This reference is to the second paragraph 17.

shares and certain benefits associated with AXA's then-upcoming initial public offering. (Compl. ¶¶ 24, 26-27.) According to Joseph's supervisor, AXA "needed a different skill set" and her termination "had been in the works for some time." (*Id.* ¶ 25.) Joseph alleges that this stated reason was pretextual, and that she was really terminated because of her upcoming adoption of a child and exercise of leave rights under the Family and Medical Leave Act and AXA's parental leave policy. (*Id.* ¶¶ 24-25.) Joseph, who is 51 years old and of Indian descent, further asserts that her termination was the consequence of discriminatory animus due to her age and ethnicity or national origin. (*Id.* ¶¶ 10, 24.)

Based on her termination, Joseph has asserted claims for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; violation of the New York City Human Rights Law, Administrative Code of the City of N.Y. § 8-101 *et seq.*; breach of contract; intentional infliction of emotional distress; negligent infliction of emotional distress; civil conspiracy; and breach of the implied covenant of good faith and fair dealing. On July 12, 2018, AXA moved to transfer venue to the Southern District of New York pursuant to Fed. R. Civ. P. 12(b)(3). (D.E. 8.)[2] AXA asserts that the District of New Jersey is an improper venue, requiring transfer pursuant to 28 U.S.C. § 1406(a), or, alternatively, that venue should be transferred for the convenience of the parties in the interest of justice pursuant to 28 U.S.C. § 1404(a). The motion was fully briefed (D.E. 8, 11, 13), and Judge Waldor issued her report and recommendation, which recommended transfer, on September 12, 2018 (D.E. 16). Judge Waldor concluded that although venue is

---

[2] AXA simultaneously moved to dismiss five of the nine counts – *i.e.*, all of the common law claims – on the grounds that they fail to state a claim for which relief may be granted. (D.E. 9.) It also disputed the veracity of Joseph's factual allegations. Based on the ruling herein that this action will be transferred, the Court declines to rule on AXA's motion to dismiss.

3

proper in this district, the case nonetheless should be transferred to the Southern District of New York under 28 U.S.C. § 1404(a) for the convenience of the parties and in the interest of justice.

### III. Standard of Review

Ordinarily, in reviewing a magistrate judge's report and recommendation on a dispositive matter, the district court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections is made," and may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2). When no objection is made, however, the Court need only give "reasoned consideration" to the report before approving it, *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017), or, at most, review it for clear error, *see Giftboxcenter, LLC v. Petbox, Inc.*, 2017 U.S. Dist. LEXIS 34749, at *1 n.1 (D.N.J. Mar. 10, 2017) (Vazquez, J.). *See also* 1983 Advisory Committee Notes to Fed. R. Civ. P. 72(b) (absent timely objection, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation"). A finding is clearly erroneous when, although evidence exists to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bobian v. CSA Czech Airlines*, 222 F. Supp. 2d 598, 601 (D.N.J. 2002) (Debevoise, J.) (internal quotation marks omitted) (quoting *Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990)).

Motions to transfer venue are non-dispositive, and magistrate judges are therefore empowered to decide them rather than recommend a disposition. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(a)(1); *Sandler v. Donley*, 2011 U.S. Dist. LEXIS 61190, at *3-4 (D.N.J. June 8, 2011) (Kugler, J.) ("A motion to transfer a case to another district is a non-

dispositive motion."). Any party objecting to the magistrate judge's ruling then appeals the decision to the district court (within 14 days, the same deadline as for a party to file objections to a magistrate judge's report and recommendation on a dispositive matter), and the district court sets aside any portion "found to be clearly erroneous or contrary to law." *See* L. Civ. R. 72.1(c)(1)(A), (c)(2). Although the report-and-recommendation procedure was followed for AXA's motion to transfer, it is a procedural distinction without a practical difference here; given the absence of any objections to Judge Waldor's decision (or to the use of this procedure), the Court's review of Judge Waldor's findings is for, at most, clear error, as it would have been had the recommendation been a decision and an appeal were taken to this Court.[3]

**IV.     Analysis**

AXA has argued that this action must be transferred to the Southern District of New York because, under 28 U.S.C. § 1391(b), venue is improper in the District of New Jersey. *See* 28 U.S.C. § 1406(a) (requiring district court in which venue is improperly laid to dismiss or transfer case to district in which it could have been brought). Section 1391(b) permits civil actions to be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

---

[3] Although a report and recommendation lacks the force of law until the district court enters an order accepting or rejecting it, *see, e.g.*, *ICAP Corporates, LLC v. Drennan*, 2016 U.S. Dist. LEXIS 18892, at *9 (D.N.J. Feb. 17, 2016) (Linares, J.) (citing *United Steelworkers of Am. v. N.J. Zinc Co.*, 828 F.2d 1001, 1005 (3d Cir. 1987)), the Court's order accompanying this opinion accomplishes that task.

Joseph invoked both AXA's residence and the location of the events as bases for laying venue in the District of New Jersey. (Compl. ¶ 9.)[4] Entity defendants are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Personal jurisdiction may be exercised over an out-of-state defendant having sufficient minimum contacts with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" and may take the form of either general (jurisdiction for all purposes) or specific (jurisdiction for purposes of the case in question only). *BNSF Rwy. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[5] General jurisdiction exists when the company's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (citation and internal quotation marks omitted).

Joseph invokes only specific jurisdiction. (*See* D.E. 11, Opposition Brief 10.) She claims that because AXA maintained a New Jersey office in which she worked for part of her time with the company, and because her claims and AXA's defenses are based on her employment history with the company, AXA has sufficient minimum contacts with New Jersey to be subject to this suit in this district. Judge Waldor agreed, finding that AXA maintains an office in this state (the office at which Joseph worked for several years while employed with AXA); hired Joseph, a New Jersey resident, here; and, as a whole, purposely availed itself of the

---

[4] Because residence under 28 U.S.C. § 1391(b)(1) is a sufficient basis for venue, it is unnecessary to reach AXA's argument that venue is improper under § 1391(b)(2).

[5] New Jersey permits the exercise of long-arm jurisdiction to the full extent allowed by the due process clause of the U.S. Constitution. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

privilege of conducting business in this state such that it may properly be subject to suit here. (Report & Recommendation 6.) The Court concurs with Judge Waldor's finding that venue was properly laid in this district for this particular action based on AXA's contacts with New Jersey and Joseph's employment history and claims.

Nevertheless, Judge Waldor properly further concluded that other factors warrant discretionary transfer of the case to the Southern District of New York, where there is no dispute that it could have been filed. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," the Court may transfer this action to any other district in which it might have been brought. In addition to the statutorily-enumerated factors, the Third Circuit employs a multi-factor analysis of so-called private and public interest factors. The private interest factors include (1) the plaintiff's original choice of forum; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties, as demonstrated by their relative physical and financial conditions; (5) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one forum or the other; and (6) the location of the books and records, but only to the extent they could not be produced in the alternative forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The public interest factors include (1) the enforceability of a resultant judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative congestion of each forum's docket; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the trial judge's familiarity with governing state law. *Id.* at 879-80.

There is no clear error in Judge Waldor's finding that the foregoing factors favor transfer. As to the private interest factors raised by the parties, despite Joseph laying venue in this district,

her claims in this employment discrimination action are based on conduct that allegedly occurred in New York, and while she was working exclusively at AXA's New York office. (Report & Recommendation 7-8.) Indeed, Joseph does not base any of her allegations on pre-2017 conduct by AXA, and simply speculates that her entire employment history with the company will be ultimately be sufficiently relevant that her forum preference should govern. Additionally, the relevant witnesses are located in New York, and whether they would be available for trial in a New Jersey forum is not clear. (*See id.* at 9.)[6] As to the public interest factors that the parties raised, Judge Waldor properly recognized that a New York court would have a greater interest in deciding a controversy over an employment decision made in New York with respect to an employee who worked in New York. (*Id.* at 9-10; *see also* D.E. 8-2, LaVallee Decl. ¶ 7.) This Court further notes that although the parties appear to dispute which state's law governs Joseph's common law claims, it is abundantly clear that New York law and jurisprudence will govern Joseph's New York statutory claims.

## V.  Conclusion

On the record before it, the Court is not left with the slightest, let alone a "definite and firm," conviction that Judge Waldor erred in recommending AXA's motion to transfer venue. Accordingly, the Court accepts Judge Waldor's report and recommendation (D.E. 16), and AXA's motion to transfer venue (D.E. 8) is granted. An appropriate order will follow.

|  |  |
|---|---|
| Date: November 14, 2018 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J |

---

[6] AXA acknowledges that its books and records would be available in either forum. (D.E. 8-1, Moving Br. 12 n.4.)